## Salkeld v. Civil Service Commission

*Berman & Richard*, for plaintiff.
*Butler, Beatty, Greer & Johnson*, for defendant.

BRETHERICK, J., April 7, 1955.—Plaintiff, Albert. Salkeld, Jr., a former member of the police force of the Township of Upper Darby, brought this action in mandamus to compel the civil service commission of the township to grant him a hearing, pursuant to the civil service provisions of the First Class Township Code.

The pleadings in the case consist of a complaint and an answer. By written agreement of counsel, filed of record, the case was tried before a judge without a jury: Act of April 22, 1874, P. L. 109, 12 PS §688 et seq.

The decision in this case turns upon the construction to be given to section 640 of the First Class Township Code, 53 PS §19092-640, as follows:

"All original appointments to any position in the police force or as paid operators of fire apparatus shall be for a probationary period of six months, but during the probationary period an appointee may be dismissed only for a cause specified in section 637 of this sub-division. If at the close of a probationary period the conduct or fitness of the probationer has not been satisfactory to the township commissioners, the probationer shall be notified in writing that he will not receive a permanent appointment. Thereupon, his appointment shall cease; otherwise, his retention shall be equivalent to a permanent appointment."

The material facts are not in dispute, and may be briefly stated. By resolution of the Board of Commissioners of the Township of Upper Darby, dated May 4, 1954, plaintiff was appointed to the rank of patrolman in the police department of the township for a probationary period of six months, the appointment to be effective June 1, 1954. Plaintiff entered upon the performance of the duties of his appointment and actually performed such duties during the period from

June 1, 1954, to November 30, 1954, both days inclusive.

Under date of November 29, 1954, the board of commissioners adopted a resolution which began by reciting plaintiff's appointment on June 1, 1954, effective June 2, 1954. The resolution contained a finding by the board that, "during the probationary period, the fitness of Albert D. Salkeld, Jr., has not been satisfactory to the Board of Commissioners". It concluded with a direction that the secretary, in accordance with the provisions of section 640 of the township code, should notify plaintiff in writing that he would not receive a permanent appointment "at the end of his probationary period December 1, 1954".

Pursuant to this direction, the secretary of the township addressed a letter to plaintiff setting forth the adoption of the resolution and a brief summary of its contents. The concluding paragraph of the letter read as follows:

"You were appointed to the rank of patrolman for the probationary period of six months at a regular meeting of the Board held *June 1, 1954*, and your appointment was effective *June 2, 1954;* your employment with the Township will terminate at the end of the day of December *1, 1954*". (Italics supplied.)

This letter was delivered to plaintiff on the afternoon of November 30, 1954.

Plaintiff reported at police headquarters for work at 11:45 p.m. on November 30, 1954, his tour of duty being from midnight to 8 a.m., December 1, 1954. While there was some conflict in the testimony as to whether plaintiff had his police badge with him, we accept it as a fact that plaintiff was ready and willing to go on duty at the appointed time. Plaintiff was not permitted to work, or to stand roll call, which took place at midnight, but was informed by Lieutenant Conroy that his probationary period had expired.

Shortly after roll call, plaintiff left headquarters and returned to his home. He performed no service for the township after November 30, 1954.

Thereafter, plaintiff served upon the civil service commission a written demand for a hearing, as provided in section 645 of the code, but his demand was rejected.

Plaintiff was appointed to the police force, as we have seen, on May 4, 1954, the appointment to be effective June 1, 1954. His probationary period, therefore, ended on November 30, 1954. However, both the resolution of November 29, 1954, and the secretary's letter, set forth the date of appointment as June 1, 1954, and the effective date thereof as June 2, 1954. Likewise, both the resolution and the letter set forth the end of plaintiff's probationary period as December 1, 1954. And, as has been seen, the secretary's letter ended with the statement that plaintiff's employment with the township would terminate at the end of the day of December 1, 1954.

It is plaintiff's contention, as contained in his brief, that on these facts "there was a retention of plaintiff in the police force equivalent to a permanent appointment". He argues that, in consequence, he is entitled to a hearing by the civil service commission, under the express language of section 645 of the code, since he made demand for such hearing.

We do not agree with plaintiff that his retention in the police force beyond the probationary period of six months was ipso facto equivalent to a permanent appointment. Nothing in the language of the law supports such conclusion.

Section 640 of the code, in material part, provides: "If at the close of a probationary period the conduct or fitness of the probationer has not been satisfactory to the township commissioners, the probationer shall be notified in writing that he will not receive a permanent

appointment. Thereupon, his appointment shall cease; otherwise, his retention shall be equivalent to a permanent appointment."

Plaintiff interprets this to mean that a probationer's retention *beyond probationary period* shall be equivato a permanent appointment. But the act does not say so. The probationary period limits the probationer; he has six months in which to demonstrate a conduct or fitness satisfactory to the township commissioners. It is certain that the statute should receive a reasonable construction. Clearly, the probationer has the entire probationary period in which to make good. Just as clearly, the township commissioners have a reasonable time after the expiration of the probationary period in which to reach a decision with respect to the probationer's conduct or fitness. It is only after the lapse of this reasonable time, in our opinion, that the probationer's retention shall be equivalent to a permanent appointment. To expect the commissioners to form their conclusion as to conduct or fitness, and to notify the probationer in the event of a decision adverse to him, simultaneously with the closing of the probationary period, is to exact the impossible. The law does not require such split-second timing.

Some support for our conclusion may be found in the decision of the Supreme Court in Travis v. Teter, 370 Pa. 326. One of the questions in that case was whether the rating of plaintiff, a temporary school teacher, was void because it was not made during the period of her employment, in conformity with a provision of the school code. The language of the learned court on this point seems strikingly pertinent in present context (p. 336):

"It is not clear when the two year period of plaintiff's employment expired, but it is certain that both the statute and the contract should receive a reasonable construction. It is reasonable to assume that the

legislature and the contracting parties knew that a wise and fair appraisal of performance and a *rating* can best be made after the teacher's entire probationary period has ended, and not during or prior to the last few days of an examination period; and therefore must have intended to give the county superintendent a reasonable period after the end of the last examination to determine whether the rating should be satisfactory or unsatisfactory" (Italics the Supreme Court's).

It is our opinion, therefore, that a probationer's retention for a reasonable time after the expiration of his probationary period, is not equivalent to a permanent appointment. We need not decide now what constitutes a reasonable time. Clearly, a period of one day is not unreasonable.

Let us assume, however, that plaintiff is correct in his construction of the law, and that a probationer's retention beyond his probationary period is equivalent, in ordinary circumstances, to a permanent appointment. We are still of opinion that, in the light of the admitted facts, plaintiff is not entitled to the relief asked. Plaintiff *was* notified in writing, on November 30, 1954, that he would not receive a permanent appointment at the end of his probationary period. As we remarked at the trial, that was and is the important consideration. But the end of plaintiff's probationary period was designated as December 1, 1954. This was a pure mistake and inadvertence, as plaintiff freely concedes. Moreover, plaintiff admitted repeatedly throughout his testimony that he *knew* that his probationary period expired on November 30, 1954. We think that, in these circumstances, plaintiff cannot be permitted to gain a benefit or advantage as a result of the mistake on the part of the township officials.

It is a familiar principle of the law of contracts that a mistake of one party known to the other will be relieved against. That principle was discussed in Kaufman v. New York Life Insurance Co., 315 Pa. 34, where the insurance company defended on the ground of a mistake in its policy in the statement of the amount of the cash surrender value. After reviewing a number of cases from other jurisdictions where the mistake was corrected, the court said (p. 39):

"It will be noted that these cases fall generally into two categories; first, those in which there was an obvious conflict between different clauses of the same policy, with the result that the insured could not be said to have been misled; and second, those in which the mistake was so great that an inference might easily have arisen that the insured must have recognized the error. If the facts of this case had brought it within either class, it might be held that the mistake could be corrected—not upon the ground that a mutual mistake existed, but upon the cognate ground that a mistake by one party, coupled with knowledge thereof by the other, may, under certain circumstances, afford a basis for equitable relief. 'It has been held with obvious justice that a mistake by one party and knowledge of the mistake by the other, will justify relief as fully as mutual mistake': Williston on Contracts, volume 3, section 1497; see also section 1548. This doctrine was applied in Cook v. Liston, 192 Pa. 19, 43 A. 389, where a deed was reformed in view of the fact that the grantee accepted it with knowledge of an error in the estate conveyed. However, if this doctrine be applied, there must be such knowledge of a mistake on the part of the party against whom reformation is decreed as to justify an inference of fraud or bad faith."

We think the principle is applicable in the present situation. Plaintiff's retention in the police force for

a period of one day after the close of his probationary period was the result of a pure mistake on the part of the township officials. Plaintiff admittedly knew of that mistake. He cannot, in our opinion, acquire any rights as a result of the mistake.

### Decision

And now, April 7, 1955, we find in favor of defendant, Civil Service Commission of the Township of Upper Darby.

### Order

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the foregoing decision, and, if no exceptions be filed thereto within 30 days after the service of such notice, to enter judgment in accordance with such decision.